# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANGELA PERIZES and DANIELLE RIVERA, Individually, and On Behalf of All Others Similarly Situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) ) |
| DIETITIANS AT HOME, INC., | ) ) ) |
| Defendant. | ) |

Case No. _ _ _ _ _

Judge _ _ _ _ _ _ _

**JURY TRIAL DEMANDED**

## **COMPLAINT**

Plaintiffs, ANGELA PERIZES and DANIELLE RIVERA, individually and on behalf of all other similarly situated employees, by and through their counsel, bring claims pursuant to the Fair Labor Standards Act, 29 U.S.C. §§201 *et seq.* (the "FLSA"), Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.* (the "IMWL"), the Chicago Minimum Wage Ordinance, CHICAGO MUNICIPAL CODE § 1-24 *et seq.* (the"CMWO"), and the Illinois Wage Payment and Collection Act, 820 ILCS§ 115/1 *et seq.* (the "IWPCA") against Defendant, its subsidiaries and affiliates, and alleges, upon personal belief as to themselves and their own acts, and upon information and belief as for all other matters, and based upon their counsel's investigation, as follows:

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action pursuant to 29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

2. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in and does business within this District. In addition, a substantial part of the events and omissions giving rise to the claims pleaded in this Complaint occurred within this District.

## PARTIES

5. Plaintiff Angela Perizes is a resident of Illinois and worked for Defendant as a Registered Dietitian ("RD") during the applicable statute of limitations period.

6. Plaintiff Danielle Rivera is a resident of Texas but, at all times material, was a resident of Illinois. Danielle Rivera worked for Defendant as an RD during the applicable statute of limitations period.

7. Plaintiffs were employed by Defendant as "employees" as defined by Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

8. Plaintiffs worked at least two hours per week within the geographical boundaries of Chicago, IL.

9. Plaintiffs bring this case on behalf of themselves and other similarly situated employees who currently work, or who worked for the Defendant as RDs or any similar title at any time during the applicable statutory periods.

10. Defendant Dietitians at Home, Inc. ("DAH," or "Defendant"), is a provider of Medical Nutrition Therapy, Diabetic Shoes, and related services in the state of Illinois and the City of Chicago and is an "employer" within the meaning of 29 U.S.C. §203(d) of the FLSA and § 1-24-10 of the Chicago Municipal Code.

## FACTUAL BACKGROUND

11. Plaintiff Angela Perizes worked for Defendant as a Registered Dietitian ("RD") from June of 2017 until September of 2018. Plaintiff Danielle Rivera worked for Defendant as an RD from November of 2017 until May of 2018. Their primary duty was to provide Medical Nutrition Therapy to DAH's clients ("patients") in their homes. This service was fully funded by Medicare. Defendant provided Plaintiffs with the necessary tools and equipment and a vehicle to perform their jobs. Each Plaintiff drove the DAH-provided vehicle from her home to her first patient of the day and from the last patient of the day back home again.

12. Defendant dictated, controlled, and ratified the wage and hour and all related employee compensation policies.

13. Upon information and belief, approximately three years ago, Defendant changed its payroll policies for RDs. Prior to this time, the RDs were paid a weekly salary plus a bonus for seeing a certain number of patients per day. After this time, RDs received pay on an hourly basis only for time spent with patients.

14. On May 8, 2017, Defendant gave Plaintiff Angela Perizes an offer of employment ("Perizes Offer"), which she accepted by signing the offer and beginning to work for Defendant on June 5, 2017.

15. On October 6, 2017, Defendant gave Plaintiff Danielle Rivera an offer of employment ("Rivera Offer"), which she accepted by signing the offer and beginning to work for Defendant on November 2, 2017.

16. Both the Perizes Offer and the Rivera Offer included an attachment entitled "total compensation package," which outlined the wages Plaintiffs could expect to receive based on the representation that Plaintiffs would complete a minimum number of visits per day and per week.

17. Upon information and belief, other RDs who were hired by Defendant within the relevant time period under the same compensation scheme also received offers of employment which included similar total compensation packages (collectively, "the Offers").

18. Plaintiffs relied on the information included in the total compensation package in their acceptance of the Offers and expected to receive the wages outlined in the Offers in exchange for their services as employees of Defendant.

19. According to the Offers, Plaintiffs were classified as employees-at-will. The terms and conditions of their employment fall within the definition of non-exempt employees under the FLSA, IMWL, and IWPCA.

20. Plaintiffs were paid an hourly rate based on the time they spent with patients each day. Specifically, Plaintiffs received $6.50 for each 15 minutes spent with a patient. Each patient's appointment typically lasted for one hour, making Plaintiffs' hourly rate $26.00 per hour. If a Plaintiff saw a patient for only 45 minutes, however, she would only receive $19.50 for that appointment. Aside from a volume bonus that was available if an RD saw six or more patients per day, Plaintiffs received no other wages for their full-time work.

21. Defendant managed Plaintiffs' work by helping to fill their patient schedules. The Defendant set the schedule, but Plaintiffs could make changes to the schedule if necessary. Generally, the Defendant expected each Plaintiff to see an average of six patients per day, but the number of patients varied widely from none to as many as ten. Patients were scheduled on the hour, regardless of the distance between each patient's homes. Often, that meant that Plaintiffs would run behind in seeing patients or had to cut appointments short, and take less pay, in order to be on time to the next scheduled appointment.

22. In the event of a patient cancellation, if the Defendant or the RD could not schedule another patient in that time slot, Plaintiffs were not compensated for that time.

23. Each Plaintiff's workday began when she left her home in the morning to travel to her first patient of the day. In between patients, Plaintiffs' activities were restricted by Defendant. For example, if a last-minute appointment came up, Plaintiffs were financially penalized if they were unable to take the appointment because they would not get paid. They were not given any specific meal or rest breaks during the day; they were expected to be ready to work at any time. The workday ended after Plaintiffs returned home from seeing the last patient of the day and completed and submitted the required daily paperwork. At times, this required Plaintiffs to work in excess of 40 hours per week.

24. The number of hours Plaintiffs worked in a day varied based on the number of patients seen and how complicated it was to complete the required paperwork. For example, a new patient required additional charting time.

25. Despite the requirement to do so, Defendant failed to keep accurate records of the time actually worked by Plaintiffs. In fact, Plaintiffs were instructed to report eight hours of

work in DAH's payroll system every full day that they worked, regardless of the number of hours actually worked.

26. Nevertheless, Defendant calculated Plaintiffs' wages based on the hours spent seeing patients, not the hours engaged in all work activities.

27. Defendant violated federal and state wage and hour laws by failing to pay Plaintiffs for all hours actually worked and any overtime hours worked at a rate of one and a half times their regular rate of pay. Specifically, Plaintiffs and all other similarly situated RDs were not paid for:

   a. Travel time between patients;
   b. Time spent working prior to their first appointment or after arriving home from seeing their last patient;
   c. Patient cancellations;
   d. Time spent waiting for patients to be scheduled;
   e. Time spent on the phone with patients to answer questions or assist with Medicare funding;
   f. Time spent completing required patient documentation;
   g. Time spent performing required maintenance to DAH's vehicles;
   h. Time spent working through unpaid meal breaks; and,
   i. Any other activities that could be considered "work" under the applicable law.

28. Upon information and belief, Defendant also violated the Chicago Minimum Wage Ordinance by failing to pay at least one member of the proposed class the average required hourly wage.

29. Defendant knew, and was aware at all times, of the above-mentioned violations. Specifically, Defendant knew that it was not paying Plaintiffs and all other similarly situated RDs for all hours worked. It only paid them for the hours spent with patients,

despite consistently requiring them to (1) complete other work; and, (2) report an eight-hour workday, regardless of the hours actually worked.

30. Further, this pay scheme violated the agreements between Defendant and Plaintiffs, to pay them a minimum amount of wages, contained in their respective written Offers. By way of example, the Perizes Offer indicated that Plaintiff Angela Perizes would earn a minimum of $53,884 annually. She began work on June 5, 2017, so should have earned slightly more than half of that amount, or approximately $30,000, in 2017. In fact, Defendant only paid her $17,778.50 in wages in 2017.

31. The conduct alleged above reduced Defendant's labor and payroll costs.

32. Plaintiffs and all other similarly situated RDs were subject to Defendant's uniform policies and practices and were victims of Defendant's scheme to deprive them of regular wages and overtime compensation. As a result of Defendant's improper and willful failure to pay Plaintiffs in accordance with the requirements of the FLSA, IMWL, CMWO, and IWPCA, Plaintiffs suffered lost wages and other damages.

## FLSA COLLECTIVE ACTION ALLEGATONS

33. Representative Plaintiffs, Angela Perizes and Danielle Rivera, bring this case as a collective action on behalf of themselves and all other similarly situated RDs pursuant to 29 U.S.C. §216(b) to recover unpaid wages, unpaid overtime compensation, liquidated damages, unlawfully withheld wages, statutory penalties, attorneys' fees and costs, and other damages owed.

34. The proposed opt-in collective class of similarly situated persons is defined as:

    All individuals who were employed, or are currently employed, by the Defendant, its subsidiaries or affiliated companies, as Registered Dietitians ("RDs") or any other similarly titled position at any time during the relevant statute of limitations period.

35. This action is properly maintained as a collective action because the representative Plaintiffs are similarly situated to the members of the collective class with respect to job title, job description, training requirements, job duties, wage structure, Defendant's failure to pay overtime hours, Defendant's policy to only pay RDs for time actually spent with patients instead of all working time, and the wage and hour violations alleged in this Complaint, amongst other things.

36. Defendant encouraged, suffered and permitted the representative Plaintiffs and the collective class to work without pay and often to work more than forty (40) hours per week without the proper overtime compensation.

37. Defendant knew that the representative Plaintiffs and the collective class performed work that required additional wages and overtime compensation to be paid. Nonetheless, Defendant operated under a scheme, as described above, to deprive the representative Plaintiffs and the collective class of wages and overtime compensation.

38. Defendant's conduct, as alleged herein, was willful and has caused significant damage to the representative Plaintiffs and the collective class.

39. Defendant is liable under the FLSA for failing to properly compensate the representative Plaintiffs and the collective class. Plaintiffs request that the Court authorize notice to the members of the collective class to inform them of the pendency of this action and their

right to "opt-in" to this lawsuit pursuant to 29 U.S.C. §216(b), for the purpose of seeking unpaid wages, unpaid overtime compensation, liquidated damages under the FLSA, and the other relief requested herein.

40. Plaintiffs estimate that there are at least fifty members of the collective class. The precise number of collective class members can be easily ascertained by using Defendant's payroll and personnel records. Given the composition and size of the class, members of the collective class may be informed of the pendency of this action directly via U.S. mail, e-mail and by posting notice in Defendant's offices.

## CLASS ALLEGATIONS

41. Representative Plaintiffs bring claims for relief on their own and as a class action pursuant to Rule 23(a) and Rule 23(b). The class is defined as:

> All individuals who were employed, or are currently employed, by Defendant, its subsidiaries or affiliated companies, as a Registered Dietitian or any other similarly titled position at any time during the relevant statute of limitations period

35. This action is properly maintainable as a class action because:

    a. The class is so numerous that joinder of all members is impracticable;

    b. There are questions of law or fact that are common to the class;

    c. The claims or defenses of the representative Plaintiffs are typical of the claims or defenses of the class; and,

    d. The Representative Plaintiffs will fairly and adequately protect the interests of the class.

### NUMEROSITY

36. On information and belief, the total number of putative class members represents at least fifty individuals. The exact number of class members may be determined from Defendant's records.

### COMMONALITY

**37.** There are numerous and substantial questions of law and fact common to members of the stated class including, but not limited to, the following:

   a. Whether Defendant failed to keep true and accurate time records for all hours worked by the class members;

   b. Whether Defendant failed to compensate class members for all the work they required, encouraged or permitted class members to perform, including time spent traveling to and from patient appointments, time which otherwise would have been compensated but for a patient cancellation, time spent waiting to be assigned patient appointments, time spent charting, time spent performing maintenance on Defendant's vehicles, and other duties considered compensable under the applicable laws;

   c. Whether Defendant failed to pay class members all compensation rightfully owed;

   d. Whether Defendant failed to compensate class members for all work performed in excess of 40 hours per work week with overtime premium wages; and

   e. Whether the Defendant willfully failed to comply with state wage and hour laws.

38. Plaintiffs anticipate that Defendant will raise defenses that are common to the class.

**ADEQUACY**

39. The Representative Plaintiffs will fairly and adequately protect the interests of the class. They have retained experienced counsel that are competent in the prosecution of complex litigation and who have experience acting as class counsel specifically in wage and hour litigation.

**TYPICALITY**

40. The claims asserted by the Representative Plaintiffs are typical of the class members they seek to represent. The Representative Plaintiffs have the same interests and suffer from the same injuries as the class members.

41. Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to Rule 23.

**COMMON QUESTIONS OF LAW AND FACT PREDOMINATE AND A CLASS ACTION IS SUPERIOR TO JOINDER OF CLAIMS OR INDIVIDUAL LAWSUITS**

42. The numerous common questions of law and fact set forth in the commonality discussion above predominate over individual questions because Defendant's alleged underlying activities and impact of their policies and practices affected class members in the same manner: they were subjected to a policy of suffering work without pay.

43. A class action is superior to other available means for the fair and efficient adjudication of this controversy because the individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary

11

duplication of effort and expenses if these claims were brought individually. Moreover, as the damages suffered by each class member may be relatively small, the expenses and burden of individual litigation would make it difficult for plaintiffs to bring individual claims. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

44. Plaintiffs incorporate by reference all preceding paragraphs.

45. The representative Plaintiffs and other RDs are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. §216(b).

46. Section 206(a) of the FLSA requires employers to pay employees at least a minimum wage for all hours worked.

47. Defendant violated the FLSA by regularly and repeatedly failing to properly compensate the Plaintiffs and class members for the actual time they worked each week.

48. Section 207(a)(1) of the FLSA states that an employee must be paid overtime, equal to at least 1.5 times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

49. Plaintiffs and class members worked in excess of 40 hours per week for the Defendant but were not properly paid overtime wages in violation of the FLSA.

50. Through its actions, policies and practices, Defendant violated the FLSA by regularly and repeatedly failing to compensate the representative Plaintiffs and other RDs for all actual overtime worked at the proper rate of pay.

51. Defendant also willfully failed to pay wages, overtime pay and other benefits to the Plaintiffs and class members by failing to keep accurate time records to avoid paying them the wages and benefits they were entitled to under the FLSA.

52. The foregoing actions of Defendant violated the FLSA.

53. Defendant's actions were willful and not in good faith.

54. As a direct and proximate cause of Defendant's unlawful conduct, Plaintiffs and class members have suffered and will continue to suffer a loss of income and other damages.

55. Defendant is liable to Plaintiffs and other members of the class for actual damages, liquidated damages and equitable relief, pursuant to 29 U.S.C. §216(b), as well as reasonable attorneys' fees, costs and expenses.

56. Plaintiffs are also entitled to injunctive relief to prevent Defendant from continuing its violation of the FLSA and other appropriate class-wide injunctive relief.

## COUNT II
## VIOLATION OF ILLINOIS WAGE PAYMENT AND COLLECTION ACT

57. Plaintiffs incorporate by reference all preceding paragraphs.

58. Plaintiffs are members of a class that meet the requirements for certification and maintenance of a class action pursuant to Rule 23.

59. The Illinois Wage Payment and Collection Act ("IWPCA") requires employers to pay employees all wages earned by an employee pursuant to an agreement between the parties.

60. Defendant violated the IWPCA by failing to pay the wages agreed upon in the Offers.

61. Defendant further violated the IWPCA by regularly and repeatedly failing to properly compensate the Plaintiffs and other similarly situated RDs for the actual time they worked each week.

62. As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs and other similarly situated RDs have suffered and will continue to suffer lost wages and other damages.

63. Plaintiffs and class members are also entitled to injunctive relief to prevent Defendant from continuing its violation of these statutory provisions and other appropriate class-wide injunctive relief.

## COUNT III
## VIOLATION OF ILLINOIS MINIMUM WAGE LAW

64. Plaintiffs incorporate by reference all preceding paragraphs.

65. Plaintiffs are members of a class that meets the requirements for certification and maintenance of a class action pursuant to Rule 23.

66. Defendant is an "employer" and Plaintiffs and class members are "employees" under Illinois Minimum Wage Law ("IMWL"), 820 ILCS §§105 *et seq*.

67. The IMWL, 820 ILCS §§105 et seq., requires employers to pay employees minimum wages for all hours worked. Section 105/4(a) of the IMWL requires employers to pay employees one and one half times their regular rate for all hours worked over forty (40) hours per work week. Section 105/12 of the IMWL provides that employers who violate the provisions of this act are liable to affected employees for unpaid wages, costs, attorney's fees, damages of 2% of the amount of any such underpayment for each month following the date of underpayments and other appropriate relief.

68. Defendant violated the IMWL, 820 ILCS §§105 *et seq*., by regularly and repeatedly failing to properly compensate Plaintiffs and class members for the actual time they worked each week.

69. Defendant violated IMWL, 820 ILCS §§105 *et seq.*, by failing to maintain accurate records of all hours worked by Plaintiffs and class members.

70. Defendant failed to pay overtime pay and other benefits to the Plaintiffs and other similarly situated RDs.

71. As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs and class members have suffered and will continue to suffer lost wages and other damages.

72. Plaintiffs and other similarly situated RDs are also entitled to injunctive relief to prevent Defendant from continuing its violation of these statutory provisions and other appropriate class-wide injunctive relief.

## COUNT IV
## VIOLATION OF THE CHICAGO MINIMUM WAGE ORDINANCE

73. Plaintiffs incorporate by reference all preceding paragraphs.

74. Defendant is an "employer" and Plaintiffs and class members are "covered employees" under the Chicago Minimum Wage Ordinance ("CMWO"), CODE CHICAGO MUNICIPAL CODE § 1-24-010.

75. The CMWO entitles employees who work within the city limits of Chicago, IL to certain minimum hourly wage payments. The CMWO further provides that employees who do not receive such minimum wages may recover three times the amount of any such underpayment, together with costs and reasonable attorney's fees.

76. Upon information and belief, Defendant violated the CMWO by failing to pay RDs for every hour worked each week, which resulted in at least one potential class member's average hourly wage to dip below the minimum required by the CMWO.

77. As a direct and proximate result of Defendant's unlawful conduct, class members have suffered and will continue to suffer lost wages and other damages.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, ANGELA PERIZES and DANIELLE RIVERA, individually and on behalf of all others similarly situated, by and through their attorneys, demand judgment against the Defendant and in favor of the Plaintiffs and all others similarly situated, for a sum that will properly, adequately and completely compensate Plaintiffs for the nature, extent and duration of their damages, the costs of this action and as follows:

A. Order the Defendant to file with this Court and furnish to counsel a list of all names, telephone numbers, and addresses of all Registered Dietitians or any other similarly titled position who have worked for the Defendant within the last three years under the payment scheme described in this complaint;

B. Authorize Plaintiffs' counsel to issue notice at the earliest possible time to all Registered Dietitians or any other similarly titled position who have worked for the Defendant within the last three years, informing them that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they were deprived of regular wages and overtime compensation, as required by the FLSA;

C. Certify a class for Counts I, II, III and IV, of all individuals who are currently employed and classified by the Defendant, its subsidiaries or affiliated companies in the state of Illinois, as non-exempt, Registered Dietitians or other positions performing similar responsibilities for Defendant, or were so employed and classified at any time during the relevant statute of limitations period.

D. Appoint Noelle Brennan & Associates, LTD as counsel for the Plaintiffs;

E. Declare and find that the Defendant committed one or more of the following acts:

   i. Violated provisions of the FLSA by failing to pay regular wages, overtime wages and other benefits to Plaintiffs and similarly situated persons who opt-in to this action;

   ii. Willfully violated provisions of the FLSA;

   iii. Violated provisions of the Illinois Wage Payment and Collection Act, 820 ILCS §115 et seq., by failing to pay agreed wages to Plaintiffs and class members;

   iv. Violated the Illinois Minimum Wage Law, 820 ILCS §105 et seq., by failing to pay appropriate overtime payments to Plaintiffs and class members; and,

   v. Violated the Chicago Minimum Wage Ordinance, CHICAGO MUNICIPAL ORDINANCE §1-24 *et seq.*, by failing to pay appropriate minimum wage payments to class members.

F. Award compensatory damages, including all pay owed and wrongful deductions made, in an amount according to proof;

G. Award 2% per month interest on all overtime compensation due accruing from the date such amounts were due until it is paid;

H. Award liquidated damages on all compensation due accruing from the date such amounts were due;

I. Award treble damages on all wage shortages below the applicable wage rate in the CMWO;

J. Award all costs and reasonable attorneys' fees incurred prosecuting this claim;

K. Grant leave to amend the complaint to add claims under applicable state and federal laws;

L. Grant leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and,

M. For such further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues of facts and damages in this action.

Dated: February 5, 2019      Respectfully Submitted,

/s/ Noelle Brennan

Noelle Brennan
Kristin Carter
Naomi Frisch
Noelle Brennan & Associates, LTD
20 South Clark Street, Suite 1530
Chicago, Illinois 60603
312-422-0001
312-422-0008 f
www.nbrennan-associates.com

**ATTORNEYS FOR THE PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2019, I filed the foregoing **COMPLAINT** with the Clerk of the Court using the CM/ECF system which will provide notification of such filing to the e-mail addresses of all counsel of record.

RESPECTFULLY SUBMITTED,

/s/Noelle Brennan
One of Plaintiffs' Attorneys
