UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELA PERIZES and DANIELLE RIVERA, individually and on behalf of all other similarly situtated, | No. 19 C 740 |
| Plaintiffs, | Judge Thomas M. Durkin |
| v. | |
| DIETITIANS AT HOME, INC., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Angela Perizes and Danielle Rivera allege that their former employer, Dietitians at Homes, Inc., failed to pay them proper wages in violation of the Fair Labor Standards Act, the Illinois Minimum Wage Law, the Chicago Minimum Wage Ordinance, and the Illinois Wage Payment and Collection Act. Defendant has moved to dismiss the claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 10. That motion is denied in part and granted in part.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

**Background**

Defendant provides nutrition therapy services to people with diabetes and kidney disease in the Chicago and northern Indiana region. *See* Dietitians at Home website, https://www.dietitiansathome.com/ (last visited June 28, 2019). To provide this service, Defendant hires registered dietitians to visit patient homes and counsel patients on nutrition and diet. *See* Dietitians at Home website, "What is Medical Nutrition Therapy (MNT)?" https://www.dietitiansathome.com/medical-nutrition-therapy-mnt (last visited June 28, 2019). These services are funded by Medicare. R. 1 ¶ 11. Defendants provided Plaintiffs with a vehicle and the equipment required to perform this counseling. *Id.*

2

Plaintiff Perizes worked for Defendant as a registered dietitian from June 2017 until September 2018. R. 1 ¶ 11. Plaintiff Rivera worked for Defendant as a registered dietitian from November 2017 until May 2018. *Id.* At the outset of their employment, Plaintiffs received written "offers" of employment. *Id.* ¶¶ 14-15. Plaintiffs allege that Perizes's offer "indicated" that she would earn a minimum of $53,884 annually. *Id.* ¶ 30. However, in seven months of work in 2017, Perizes was paid only $17,778.50, i.e., less than half of the indicated annual amount. *Id.* Plaintiffs do not provide greater detail about the "offer" of $53,884 other than alleging that the amount was "indicated."

Plaintiffs' "offers" also included "compensation packages" explaining that they would be compensated at a rate of $6.50 for every 15 minute period they spent visiting a patient, with a patient appointment typically lasting one hour. *Id.* ¶¶ 16, 20. Plaintiffs were also entitled to receive a "volume bonus" if they saw six or more patients in a single day. *Id.* ¶ 20. Plaintiffs were not paid for travel or waiting time in between patient appointments. *Id.* ¶ 27. Defendant controlled the scheduling of appointments. *Id.* ¶ 20. The number of appointments scheduled in any given day for a single registered dietitian varied widely from zero to ten. *Id.* Appointments were always scheduled on the hour regardless of the distance between patients' homes, which often forced Plaintiffs to run behind or cut appointments short. *Id.* Plaintiffs were not compensated for patient cancelations. *Id.* Plaintiffs were not paid for meal or rest breaks. *Id.* ¶ 23.

Sometimes, these circumstances caused Plaintiffs to work more than 40 hours per week. *Id.* ¶ 23. But regardless of the number of hours actually worked, Plaintiffs were instructed to report eight hours of work in the payroll system. *Id.* ¶ 25.

Based on these alleged facts, Plaintiffs bring three claim (under various statutes): (1) failure to pay overtime; (2) failure to pay the minimum wage to "at least one member of the proposed class," *id.* ¶ 28, and (3) failure to pay wages in accord with the "offer of employment" Plaintiffs signed.

## Analysis

I. **Commerce**

As an initial matter, Defendant argues that Plaintiffs fail to allege the "commerce" element of a claim under the FLSA. *See* R. 10 at 2. The FLSA applies to any employee who is "engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1). The FLSA defines "enterprise engaged in commerce or in the production of goods for commerce" to mean:

> an enterprise that—
> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) . . . .

4

29 U.S.C. § 203(s)(1).

Defendant argues that Plaintiffs fail to allege that Defendant is "engaged in commerce." R. 10 at 2. But Plaintiffs allege that Defendant provided them with a vehicle to travel to appointments. It is highly likely that the vehicle, or at least parts of the vehicle, were produced out of state. It is sufficient "to allege that in the course of their employment a local company's employees used tools and accessories that were manufactured in other states and transported to Illinois." *Martinez v. Citizen's Taxi Dispatch, Inc.*, 2017 WL 2311231, at *3 (N.D. Ill. May 26, 2017) (citing *Cardenas v. Grozdic*, 2012 WL 2359399, at *3 (N.D. Ill. June 20, 2012)). Thus, the fact that Plaintiffs used cars provided by Defendant is sufficient to plausibly allege that Defendant engages in commerce for purposes of the FLSA.

Enterprises covered by the FLSA must also earn at least $500,000 in annual gross revenue. Defendant argues that Plaintiffs have failed to make this allegation. But Plaintiffs allege that Defendant employs at least 50 registered nurses, *see* R. 1 at 10 (¶ 36), and that at least one of those registered nurses earned $17,778.50 for seven months of work, *see id.* ¶ 30. Multiplying those earnings by 50 registered nurses results in a total of about $1.5 million in annual compensation. It is highly likely that Defendant's annual revenue is more than the $1.5 million Plaintiffs have alleged Defendant spends to compensate its registered nurse employees.

Therefore, Plaintiffs have plausibly alleged that Defendant is an "enterprise engaged in commerce" subject to the FLSA.

## II. Overtime

The FLSA requires covered employers to pay employees 1.5 times their regular wage for any time worked over 40 hours in a week. *See* 29 U.S.C. § 207(a)(1). Defendants argue that "the generalized allegation that plaintiffs regularly worked hours over 40 in a week and were not compensated for such time is insufficient." R. 10 at 3. Defendant argues that the claim must be dismissed because "there are no allegations in the Complaint containing specific details of dates worked or hours worked each week." *Id.* at 4.

Contrary to Defendant's argument, "plaintiffs need not necessarily plead specific dates and times that they worked undercompensated hours." *Hirst v. Skywest, Inc.*, 910 F.3d 961, 966 (7th Cir. 2018); *see also Hancox v. Ulta Salon, Cosmetics, & Fragrance, Inc.*, 2018 WL 3496086, at *3 (N.D. Ill. July 20, 2018) ("There is no requirement, however, that a FLSA plaintiff identify, by date, the specific weeks in which she was undercompensated[.]"). Rather, plaintiffs must "provide some factual context that will nudge their claim from conceivable to plausible." *Hirst*, 910 F.3d at 966. This means that plaintiffs "must provide sufficient factual context to raise a plausible inference there was at least one workweek in which he or she was underpaid." *Id.*

Plaintiffs have provided such context in their complaint. Plaintiffs allege that they are not paid for any time other than when they are actually visiting patients. They also allege that their schedule is sufficiently irregular that they often end up working more than eight hours in a day in order to complete their appointments.

6

And more important, Plaintiffs expressly allege that Defendant has a practice of recording only eight hours of work regardless of the number of hours actually worked. These facts serve to plausibly allege that Plaintiffs worked at least one week in which they were not paid for overtime in violation of the FLSA.

## III. Minimum Wage

Plaintiffs' minimum wage violations are a different story. Plaintiff has made no allegations regarding their effective hourly compensation. The only allegation in the complaint directly related to a minimum wage claim is paragraph 28 in which Plaintiffs conclusorily allege, "Upon information and belief, Defendant also violated the Chicago Minimum Wage Ordinance by failing to pay at least one member of the proposed class the average required hourly wage." R. 1 ¶ 28. Plaintiffs point to no factual basis to make this allegation plausible, and in any case, it only addresses Chicago's higher minimum wage, not the federal or Illinois minimum wages.

Even if the Court were to extrapolate from the compensation Plaintiffs allege they received, their minimum wage claims are not plausible. Plaintiffs allege that Perizes earned $17,778.50 for seven months of work. That equals $586.10 per week. Giving Plaintiffs the benefit of the doubt, and assuming they worked 50 hours per week, their hourly wage would have been $11.72. This is higher than the federal ($7.25), Illinois ($8.25), and Chicago until July 1, 2018 ($11 increasing to $12) minimum wages that were in effect during the relevant time periods. Further, even if the Court were to assume that Plaintiffs averaged 60 hours of work per week, their effective hourly wage would have been $9.77, greater than all but the Chicago

7

minimum wage. But there is nothing in the complaint indicating that Plaintiffs ever worked as many as 60 hours per week. Therefore, Plaintiffs' minimum wage claims are dismissed.

## IV. Illinois Wage Protection and Collection Act

The IWPCA permits employees to sue for compensation they are owed by an employer "pursuant to an employment contract or agreement." 820 ILCS 115/2. A "contract is not necessary under the [IWPCA]." *Landers-Scelfo v. Corp. Office Sys., Inc.*, 827 N.E.2d 1051, 1059 (Ill. App. Ct. 2d Dist. 2005). Indeed, "a worker seeking to recover under [the IWPCA] does not need to plead all contract elements if she can plead facts showing mutual assent to terms that support the recovery." *Id.*; *see also Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012) ("Illinois courts have explained that an agreement under the IWPCA is broader than a contract."). However, "the IWPCA provides no substantive relief beyond what the underlying employment contract requires." *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 570 (7th Cir. 2016).

Plaintiffs argue that Defendant failed to pay the wages "outlined" in the "offers of employment," R. 17 at 10 (citing complaint ¶¶ 14-17), i.e., "the representation" in the offer of employment "that Plaintiffs would complete a minimum number of visits per day and per week," R. 1 ¶ 16. But this is an allegation that there were not as many patient appointments to go around as Plaintiffs were led to believe. This is not an allegation that Defendant failed to pay for time Plaintiffs spent serving patients, or any other wages Defendant agreed to

8

pay. Of course, Plaintiffs allege that their "work" for FLSA purposes should include travel time and the time they spent waiting to be assigned patient appointments. But Plaintiffs have not alleged that Defendant ever agreed to pay for this time. Thus, the allegation that Plaintiffs were not paid for this time cannot form the basis of a claim for violation of an employment agreement under the IWPCA. *See Dominguez v. Micro Ctr. Sales Corp.*, 2012 WL 1719793, at *1 (N.D. Ill. May 15, 2012) ("The IWPCA does not establish a substantive right to overtime pay or any other kind of wage. . . . [It] merely requires 'that the employer honor his contract.'").

This reasoning is equally true if Plaintiffs intend to rely on their allegation that the offers of employment "indicated" that Plaintiffs would receive a certain amount in a year. According to Plaintiffs' allegations, this "indicated" amount was dependent on the wage of $6.50 per 15 minute increment provided in the compensation package. Plaintiffs have not alleged that Defendant "agreed" to pay Plaintiffs a minimum annual amount regardless of the volume of patients seen. Without such an agreement, the alleged "indicated" compensation amounts cannot serve to state a claim for violation of the IWPCA.

**Conclusion**

Therefore, Defendant's motion to dismiss, R. 10, is denied in that Plaintiffs' overtime claims will proceed. The motion is granted in that the minimum wage and IWPCA claims are dismissed without prejudice. Plaintiffs are granted leave to file an amended complaint by July 23, 2019. Plaintiffs should be prepared to state

9

whether they intend to file an amended complaint at the status hearing set for July 2, 2019.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: June 28, 2019