UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELA PERIZES, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>DIETITIANS AT HOME, INC., ARISTOTLE KORNAROS, individually, and SUZANNE HALL, individually,<br><br>        Defendants. | No. 19-cv-00740<br>Judge Franklin U. Valderrama |

MEMORANDUM OPINION AND ORDER

Plaintiff Angela Perizes (Plaintiff), on behalf of herself and all others similarly situated, filed this proposed class action lawsuit against her former employers, Dietitians at Home, Inc. (Dietitians at Home), Aristotle Kornaros, Dietitians at Home's President and Owner (Kornaros), and Suzanne Hall, Dietitians at Home's Chief Financial Officer (Hall) (collectively, Defendants) for improperly designating Plaintiff and others similarly situated as "exempt" from overtime pay and for failing to pay them overtime compensation in alleged violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (FLSA). R. 64, Second Amended Complaint (SAC).[1] Plaintiff now moves for conditional certification of a FLSA collective action and for authorization to issue step-one notice. R. 66, Mot. for Conditional Cert. For the

---

[1] Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

reasons explained below, the Court grants in part and denies in part Plaintiff's motion for conditional certification as a collective action and issuance of notice. The Court conditionally certifies the proposed class and authorizes Plaintiff to proceed with notice to potential collective action members with one notice plan modification regarding reminder notices, as detailed further below.

## Background

Dietitians at Home, operating out of a single office in Chicago, Illinois, provides at-home Medical Nutrition Therapy, Diabetic Shoes services, and other related services to Illinois and Indiana clients. SAC ¶ 8. Kornaros serves as Dietitians at Home's President and Owner, and Hall serves as the Chief Financial Officer, who oversees scheduling and billing. *Id.* ¶¶ 10–11. Plaintiff and others allegedly similarly situated were and are Registered Dietitians employed by Dietitians at Home to provide at-home Medical Nutrition Therapy to patient-clients. *Id.* ¶¶ 12, 50. Plaintiff was employed by Dietitians at Home from June 2017 through September 2018. *Id.* ¶ 12. Plaintiff alleges that a Registered Dietitian's duties included traveling from one patient's home to the next to perform patient visits and provide care; instructing patients and caregivers on how to continue care; completing documentation of patient visits, known as "charting"; coordinating patient care with physicians and other providers; and performing other duties in connection with each patient visit that cannot be completed while in the patients' homes. *Id.* ¶¶ 12, 28–35.

Plaintiff alleges that Defendants routinely required her and other Registered Dietitians to perform these duties for more than 40 hours per week but strictly

instructed them to record no more than eight hours of work per day, regardless of the time actually spent working in a given day. SAC ¶¶ 31, 33. Indeed, Plaintiff alleges that she and other Registered Dietitians were not compensated for conducting work prior to the beginning of their shifts; traveling to their first appointments; time spent maintaining Dietitians at Home vehicles; time spent completing required patient documentation or on the phone with patients and/or medical professionals either before or after their official shift; time spent on unpaid meal breaks; or any other time working while not seeing patients. *Id.* ¶ 35.

In light of this, Plaintiff claims that Defendants willfully violated the FLSA[2] by denying them pay at one-and-a-half times their regular rate for time worked beyond 40 hours per week. Mot. for Conditional Cert. at 5; *see also* SAC ¶¶ 24, 31, 33, 35. Individuals qualify as professionals exempt from overtime compensation under the FLSA only if: (i) they are compensated on a salary basis; (ii) their primary duty is management; (iii) they customarily and regularly direct the work of two or more other employees; and (iv) they have the authority to hire or fire other employees or their suggestions and recommendations as to the hiring, firing, promotion, or change in status of other employees are given particular weight. 29 U.S.C. § 213(a); 29 C.F.R. § 541.100; *see also* 29 C.F.R. § 541.700 (defining "primary duty"). Plaintiff contends that Registered Dietitians were paid an hourly rate based on time actually spent with patients each day by "units" billed to Medicare and positions subject to an hourly rate

---

[2]Plaintiff also alleges that she and other Registered Dietitians were denied proper overtime pay in violation of the Illinois Minimum Wage Law (IMWL), 820 ILCS § 105/1, *et seq.*, but Plaintiff's state law claims are not at issue in the Motion for Conditional Certification.

compensation practice (rather than a salary compensation practice) are *not* exempt from FLSA overtime requirements. SAC ¶ 25. In misclassifying Plaintiff and other Registered Dietitians similarly situated as exempt from overtime compensation, Plaintiff alleges that Defendants violated the FLSA.

Plaintiff requests that the Court grant conditional certification to a class of Registered Dietitians (proposed definition below); order Defendants to produce the names and contact information of potential class members; and approve court-supervised notice to those potential class members. Plaintiff proposes the following class definition:

> All individuals who were employed, or are currently employed, by Defendants, its subsidiaries or affiliated companies, as Registered Dietitians ("RDs") or any other similarly titled position at any time during the relevant statute of limitations period.

Mot. for Conditional Cert. at 5.

## Standard of Review

The FLSA entitles most employees "to overtime pay (i.e., one and one-half times the regular rate) for any hours worked in excess of forty hours per week, unless they come within one of the various exemptions set forth in the Act." *Vazquez v. Ferrara Candy Co.*, 2016 WL 4417071, at *3 (N.D. Ill. Aug. 19, 2016) (internal citations omitted); *see also* 29 U.S.C. §§ 207, 213. The FLSA permits employees (or former employees) who are similarly situated to bring a collective action against an employer for unpaid minimum wages or overtime compensation. 29 U.S.C. § 216(b); *see also Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010). A collective action under Section 216(b) of the FLSA differs from a class action under Federal Rule of

4

Civil Procedure 23 in that Rule 23 binds class members unless they opt *out* of the class, whereas collective action members are bound under Section 216(b) only if they opt *in* to the action by providing their written consent. *Schaefer v. Walker Bros. Enters.*, 829 F.3d 551, 553 (7th Cir. 2016). Conditional certification of a Section 216(b) collective action, as is requested here, allows a court to conditionally certify a collective action under the FLSA so that notification to putative class members may be made, those putative class members may affirmatively opt in to the collective action, and class discovery may be taken. *Slaaen v. Senior Lifestyle Corp.*, 2019 WL 1543973, at *2 (E.D. Wis. Apr. 9, 2019).

District courts have "wide discretion to manage collective actions." *Alvarez*, 605 F.3d at 448. While the Seventh Circuit has not established a framework to govern the certification of collective actions under Section 216(b), "the majority of courts [in this district] . . . have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action." *Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 1043429, at *1 (N.D. Ill. Mar. 16, 2016) (quoting *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008)).

Step one "focuses on determining *whether* similarly situated plaintiffs do in fact exist, and the second step focuses on whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs." *Gallardo v. Scott Byron & Co.*, 2014 WL 126085, at *17 (N.D. Ill. Jan. 14, 2014) (cleaned up).[3]

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See, e.g.*, *United States v. Reyes*, 866 F.3d 316, 321 (5th Cir. 2017).

This case is at step one—the conditional certification stage. Plaintiff bears the burden of showing that other similarly situated employees who are potential claimants exist. *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1132 (N.D. Ill. 2017). But because the parties have not yet engaged in discovery at this stage, Plaintiff need only "make a modest factual showing sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Grosscup v. KPW Mgmt., Inc.*, 261 F. Supp. 3d 867, 870 (N.D. Ill. 2017). Courts use a "lenient interpretation of the term similarly situated" to decide whether plaintiffs have met this burden. *Id.*; *see also Briggs*, 2016 WL 1043429, at *2 ("Potential plaintiffs need not be identically situated, only similarly situated."). Although this is a low burden, it is not nonexistent: the court has no obligation to accept Plaintiff's allegations as true as it would with a motion to dismiss. *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 751 (N.D. Ill. 2011). Plaintiff must provide some factual support, "such as in the form of affidavits, declarations, deposition testimony, or other documents," *Id.* at 750, and the court "evaluates the record before it, including the defendant's oppositional affidavits," *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010). But at this initial stage, "[t]he court does not consider the merits of a plaintiff's claims, or witness credibility." *Nehmelman*, 822 F. Supp. 2d at 751; *see also Larsen v. Clearchoice Mobility, Inc.*, 2011 WL 3047484, at *1 (N.D. Ill. July 25, 2011) ("[T]he court does not resolve factual disputes or decide substantive issues going to the merits."). If Plaintiff satisfies the burden of step one and demonstrates "an identifiable factual nexus that

binds the plaintiffs together as victims of a violation of the overtime laws then notice may be issued to prospective plaintiffs who may opt into the action, with discovery to follow." *Briggs*, 2016 WL 1043429, at \*2.

The second step, which occurs after the opt-in and discovery periods have ended, is more stringent. *Ivery*, 280 F. Supp. at 1133. "Once it is known which employees will be part of the class, the Court must reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Nehmelman*, 822 F. Supp. 2d at 751 (internal citations omitted). At that point, if the Court determines there are insufficient similarities between the plaintiffs, "it may revoke conditional certification or divide the class into subclasses." *Grosscup*, 261 F. Supp. at 870 (internal citations omitted).

## Analysis

The Court will first determine whether the proposed collective action should be conditionally certified by addressing the core question of step one—has Plaintiff met her burden in making a modest factual showing sufficient to demonstrate that she and other similarly situated employees were victims of a common practice that violated the FLSA? *Ivery*, 280 F. Supp. at 1132; *Grosscup*, 261 F. Supp. at 870. The Court will then address (and modify, if necessary) Plaintiff's proposed notice forms and methods of notice.

7

## I. Conditional Certification

Plaintiff contends that she has "made more than the necessary modest showing" that she and other similarly situated Registered Dietitians employed by Defendants were victims of Defendants' FLSA violations. Mot. for Conditional Cert. at 8. Plaintiff maintains that she has proffered evidence demonstrating that she and prospective members of the proposed class are similarly situated because they (i) are subject to the same hybrid "per unit" and hourly compensation scheme and other terms and conditions of employment; (ii) are uniformly and improperly classified as exempt employees; and (iii) perform substantially similar job duties. *Id.* Plaintiff points to (1) her own sworn deposition testimony and (2) Hall's (Dietitians at Home's Chief Financial Officer) sworn deposition testimony as supporting evidence. *See* R. 66-3, Plaintiff Dep.; R. 66-1, Hall Dep.; *see also* R. 82, Reply at 2–3.

Briefly reviewing Plaintiff's testimony, Plaintiff stated that she and other Registered Dietitians were subjected to a common practice of being paid on a hybrid "per unit" and hourly basis. *See* Plaintiff Dep. at 66:13–15 ("I was aware of the pay structure per unit billed to Medicare"; *see also id.* at 81:5–8 ("We were specifically advised to log our eight hours of work . . . ."). Plaintiff further testified that she and other Registered Dietitians were not paid for all hours worked in excess of 40 hours per workweek at a rate of one-and-one-half times their regular rate. *Id.* at 63:14–19 ("Q. Have you made a list of the days or weeks that you worked more than forty hours? A. No, but it was almost daily that I was working past the time I was supposed to be done, and again that could have ranged between one or two hours after the

workday."); *see also id.* at 21:21–22:2 ("Q. Did you think while you worked there you were entitled to be paid overtime? A. I believe the dietitians should have been paid overtime, especially because in the initial process of hiring when the job position was described to me, there wasn't any indication to us of how much other work is involved in the job. That was very time consuming."); *see also id.* at 81:5–8 ("We were specifically advised to log our eight hours of work even though we were working beyond that before the workday and after the workday.").

Hall testified that Registered Dietitians all shared the same primary job duty of providing Medical Nutrition Therapy. Hall Dep. at 16:18–23 ("Q. Are you familiar with dietitians' duties? A. Yes. Q. I'd like to talk a little bit about what a day in the life of a dietitian would be. What are their primary duties, in general? A. They provide medical nutrition therapy."). Hall further testified that Registered Dietitians were paid on the same hybrid "per unit" and hourly compensation plan. *Id.* at 21:9–11 ("Q. Are dietitians paid by wage or salary basis? A. Dietitians are paid per visit, for a billed hour to Medicare."); *see also id.* at 22:6–8 ("Q. Do they receive an annual salary? A. Dietitians are paid based on billed units to Medicare. Q. So are they paid an annual salary? A. No."). Hall further stated that Dietitians at Home treated all Registered Dietitians as exempt from overtime pay. *Id.* at 21:24–22:5 ("Q. What makes dietitians exempt? A. They're highly skilled professionals with advanced degrees who have completed over 2,000 hours of clinical training. They work independently, determining independent care plans for their patients."). And Hall testified that Angela, a Registered Dietitian, was instructed to log only eight hours even if they in

9

fact worked more than eight hours in a given day. *Id.* at 41:3–13 ("Q. So no matter what hours she worked, your testimony is that she would put in 8:00 to 4:00? A. Yes. Q. And who instructed her to put in 8:00 to 4:00? A. Her manager. Q. So if it was a day that Angela worked, her manager instructed her to put 8:00 to 4:00? A. Yes. Q. Regardless of how many hours worked? A. Yes.").

Plaintiff argues that her own deposition testimony and Hall's deposition testimony, together, provide more than "adequate evidence" that Plaintiff and other Registered Dietitians are similarly situated for purposes of conditional certification—same compensation plan, same improper overtime exempt designation, and same primary job duties. Reply at 2.

Additionally, citing two cases in this District, *Lukas v. Advoc. Health Care Network & Subsidiaries*, 2014 WL 4783028, at *1 (N.D. Ill. Sept. 24, 2014) and *Dennis v. Greatland Home Health Servs., Inc.*, 438 F. Supp. 3d 898 (N.D. Ill. 2020), Plaintiff argues that conditional FLSA certification has been granted in collective actions filed on behalf of similar classes of plaintiffs who alleged "virtually identical overtime violations." Mot. for Conditional Cert. at 8–9. Plaintiff explains that in both *Lukas* and *Dennis*, the courts granted conditional FLSA certification for home healthcare workers that had allegedly been improperly classified as exempt when they were in fact compensated under a non-exempt pay scheme similar to that of the Registered Dietitians here (on a combined per visit and hourly basis).

In response, Defendants argue that Plaintiff has not met her burden for conditional certification, because Plaintiff is the *only* Registered Dietitian who

provided evidence in support of the motion. R. 75, Resp. at 3. Defendants maintain that without testimony or declarations from more Registered Dietitians, Plaintiff's evidence in support of her motion is insufficient. *Id.* Defendants assert that Plaintiff's cited cases, *Lukas* and *Dennis*, are distinguishable, insisting that those cases involved motions for conditional certification supported by multiple declarations of potential class members and evidence as to the hours worked by other potential class members. Resp. at 6. The Court disagrees and finds both cases instructive.

In *Lukas*, the court conditionally certified a class of clinicians, who provided in-home patient care and who were allegedly wrongly classified as being exempt from the FLSA. 2014 WL 4783028, at *3. In support of the plaintiff's motion that the clinicians were sufficiently similarly situated, the plaintiff submitted three declarations (out of a potential 234 clinicians). *Id.* Like Defendants here, the defendants in *Lukas* argued that evidence of only three declarations was "too sparse to satisfy even the minimal step one burden." *Id.* The court disagreed, finding instead that the defendants' argument "ignor[ed] the other evidence of commonality that plaintiff submitted, the testimony of defendants' own witness that a common [pay] plan exists [and applies to all clinicians.]." *Id.* The court further held that coupled with the defendant's own witness's admission, the three declarations were sufficient to satisfy the plaintiff's burden. *Id.* While the Court agrees that more declarations were submitted in *Lukas* (three as opposed to one here), and so *Lukas* is arguably factually distinguishable on that one fact, the Court finds the reasoning in *Lukas* to be particularly instructive. Here too, in pointing out Plaintiff's sole testimony,

Defendants ignore the *other* evidence of commonality submitted—*Hall's* sworn testimony[4] that Registered Dietitians all shared the same primary job duty of providing Medical Nutrition Therapy; were paid on the same hybrid "per unit" and hourly compensation plan; and were all treated as exempt from overtime pay. The Court finds the rationale in *Lukas* to be analogous and applicable here.

The Court finds *Dennis* even more on point. In *Dennis*, the court similarly conditionally certified a class of clinicians, who provided in-home patient care and who were allegedly wrongly classified as being exempt from the FLSA. 438 F. Supp. 3d at 899. The plaintiff alleged that her home health services employer compensated her and other clinicians by paying them on a combined per visit basis for some work and an hourly basis for other work, a compensation practice that is not exempt from overtime requirements under the FLSA. *Id.* Importantly, as with Plaintiff here, the plaintiff in *Dennis* only submitted *one* declaration as supporting evidence—her own. *Id.* at 900. Defendants seem to suggest that because the *Dennis* plaintiff's declaration "included evidence about 30-50 other clinicians" that one declaration was sufficient,

---

[4]Defendants, somewhat confusingly, argue as an aside that the deposition of Dietitians at Home's Rule 30(b)(6) corporate representative (Hall) is not "determinative," as Rule 30(b)(6) testimony can be used only as evidence and not as a judicial admission that ultimately decides an issue. Resp. at 5. At this stage, the Court does not consider Hall's testimony to be determinative of *any* issues. Rather, the Court views Hall's testimony as one piece of evidence proffered by Plaintiff to show that she and other Registered Dietitians are similarly situated for purposes of conditional certification. Other courts in this District have likewise considered the testimony of Rule 30(b)(6) corporate representatives for deciding whether conditional certification of the class is warranted at step one. *See Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 854 (N.D. Ill. 2017); *Lukas*, 2014 WL 4783028, at *3.

and Plaintiff's testimony here is not. Resp. at 6. The Court disagrees. The plaintiff's declaration in *Dennis* provides no more evidence about other potential class members than Plaintiff's testimony does here. *Compare Dennis v. Greatland Home Health Servs., Inc.*, 19-cv-5427, R. 12-2, Dennis Decl. at ¶¶ 8, 12 (N.D. Ill. Nov. 12, 2019) ("I, along with other Clinicians, received compensation primarily based on a set visit rate for each visit completed of a certain type. . . . At any given point in time, Greatland employed approximately 30-50 Clinicians who were also paid according to the same compensation practices. I worked with these employees on a daily basis and attended meetings and in-services with them.") *with* Plaintiff Dep. at 21:21–22:2, 81:5–8 ("I believe the dietitians should have been paid overtime, especially because in the initial process of hiring when the job position was described to me, there wasn't any indication to us of how much other work is involved in the job . . . We were specifically advised to log our eight hours of work even though we were working beyond that before the workday and after the workday."). The Court finds *Dennis* is also analogous and especially instructive to the case at hand.

Defendants also argue that relying on one Registered Dietitian's testimony is "troubling," because Plaintiff has failed to proffer evidence that other Registered Dietitians are interested in joining a potential class. Resp. at 3. The Court finds this argument unpersuasive. The only case cited by Defendants in support of this proposition is an Eastern District of Arkansas case. *Id.* at 3–4 (citing *Collins v. Barney's Barn, Inc.*, 2013 WL 1668984, at *2 (E.D. Ark. Apr. 17, 2013) ("However, this Court continues to find that plaintiffs must do more than speculate that putative

opt-in plaintiffs would be interested in joining a collective action. Without such a requirement, the parties and the Court could waste valuable resources issuing notice to potential plaintiffs only to find that the case cannot proceed as a collective action.")).[5] But even the court in *Collins* recognized that district courts within the Eighth Circuit differ "as to whether and by what means a plaintiff must demonstrate that similarly-situated individuals are interested in joining the proposed collective action." *Collins*, 2013 WL 1668984, at *3. While there is no controlling precedent on this issue in the Seventh Circuit, courts in this District generally do not require a plaintiff to produce evidence that other employees desire to join the collective action, finding that a desire requirement would undermine district courts' ability to ensure class notice is fair and accurate by having named plaintiffs effectively "issue their own form of informal notice or [ ] otherwise go out and solicit other plaintiffs" before seeking conditional certification. *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989)); *see also Rossman v. EN Eng'g, LLC*, 2020 WL 5253861, at *5 (N.D. Ill. Sept. 3, 2020); *see also Allen*, 2013 WL 146389, at *9 ("[C]ourts in this district generally do

---

[5]Defendants also cite *Pecor v. N. Point EDC, Inc.*, 2017 WL 3723600, at *4 (E.D. Wis. June 9, 2017). Resp. at 4–5. But in reviewing *Pecor*, the Court finds that it does not support Defendants' intended proposition. While *Pecor* quotes *Collins* (noting that "some courts require a showing not only that similarly situated potential plaintiffs actually exist, but that a substantial number likely have an interest in joining the litigation"), the decision in *Pecor* that the plaintiff failed to meet her burden in showing that she and the putative class members were similarly situated in no way rested on the desire requirement. 2017 WL 3723600, at *4–5. Indeed, beyond quoting *Collins*, the court did not mention the interest of potential class members in its analysis. *Id.* As explained further below, courts in this District have generally rejected the notion of the desire requirement. *See Allen v. City of Chi.*, 2013 WL 146389, at *9 (N.D. Ill. Jan. 14, 2013); *Dennis*, 438 F. Supp. 3d at 900–01.

14

not require a plaintiff to produce evidence that other employees desire to join the collective action."). Indeed, in *Dennis*, the court specifically rejected this same argument. 438 F. Supp. 3d at 900–01 ("Nor am I convinced that plaintiff must show that other employees wish to participate in this action in order to obtain conditional certification."). The court explained that requiring a named plaintiff to clear such a hurdle would "undermine the 'broad remedial goal' of the FLSA." *Id.* at 901 (citing *Hoffmann-La Roche*, 493 U.S. at 173). The Court agrees with the reasoning in *Allen*, *Rossman*, *Dennis*, and *Heckler* and finds unpersuasive Defendants' contention regarding any lack of evidence of individuals who want to join the collective action.

The Court is also not convinced by Defendants' second "troubling" argument—that Plaintiff's *own* allegations about other Registered Dietitians working in excess of 40 hours per week are insufficient. Resp. at 4–5. Again, the Court finds *Dennis* instructive, as the court in *Dennis* specifically rejected this same contention. 438 F. Supp. 3d at 900. The court explained that any arguments about whether a given Registered Dietitian worked more than 40 hours per week are premature and are properly addressed at the second stage of certification. *Id.* (citing *Kujat v. Roundy's Supermarkets Inc.*, 2019 WL 1953107, at *4 (N.D. Ill. May 2, 2019) ("[C]oncerns regarding a lack of common facts among potential collective members and the need for individualized inquiries should be raised at step two, not step one . . . .")). Indeed, it is too early for this Court to weigh any competing evidence as to whether Plaintiff or any other Registered Dietitian actually worked overtime. *Dennis*, 438 F. Supp. 3d at 900; *see also* Resp. at 5 ("On the ultimate issue at bar, to wit, whether the

registered dietitians employed by [Dietitians at Home] worked more than 40 hours per week, [Dietitians at Home]'s Rule 30(b)(6) witness testified that '. . . dietitians do not work over 40 hours a week.'").[6] Furthermore, Defendants cite *Pecor*, 2017 WL 3723600, at \*4, for the contention that Plaintiff must specifically show that other Registered Dietitians worked in excess of 40 hours per week to meet the substantially similar threshold. Not only is *Pecor* an out-of-District case, but it is markedly distinguishable on its facts. Unlike here, where Plaintiff has submitted evidence that all Registered Dieticians were compensated on the same hourly/by unit basis, the proposed class of exotic dancers in *Pecor* was not subject to the same compensation scheme. *Id.* The dancers worked variable hours and were compensated differently based on experience, the nature of their performances, popularity, and individually negotiated bonus rates, so as to question whether the dancers were similarly situated. *Id.*

All in all, the Court is unpersuaded by Defendants' core argument that sworn testimony from only one potential class member is insufficient, because sworn

---

[6]Defendants also briefly argue, as another aside, that Plaintiff did not provide any evidence "beyond her own unfounded allegations that Kornaros or Hall—sued in their individual capacities—had any knowledge that the Plaintiff or any other registered dietitian worked overtime or that Kornaros or Hall were involved in [Dietitians at Home's] allegedly improper pay policies to an extent whether liability under the FLSA would attach to them." Resp. at 5–6. Determining if Kornaros or Hall had actual or constructive knowledge of whether named Plaintiff and any opt-in plaintiffs actually worked overtime without receiving compensation requires individualized inquiries and analysis of available defenses; these analyses are reserved for step two and need not be addressed here. *See Lieberman v. Altounion Constr., Inc.*, 2019 WL 6467321, at \*1 (N.D. Ill. Dec. 2, 2019) (granting conditional certification of a collective action against a construction company and its president, in his individual capacity, without discussing the president's knowledge and whether individual liability would attach); *Girolamo v. Cmty. Physical Therapy & Assocs., Ltd.*, 2016 WL 3693426, at \*1 (N.D. Ill. July 12, 2016) (same).

testimony from one potential class member was sufficient in *Dennis*; Defendants conveniently ignore the additional testimony from Defendants' witness, Hall; and Defendants have not cited an analogous case in which testimony from one potential class member and a defendant's corporate representative, on their own, were not enough to meet the substantially similar threshold. The Court finds instead that Plaintiff has provided sufficient evidence, at this early first stage, that she and potential members of her proposed class were subjected to the same unlawful policy. Plaintiff's deposition testimony and Hall's deposition testimony show, at this stage, that Plaintiff and other Registered Dietitians, who were all expected to perform the same primary duties and who were all compensated on an hourly/by unit basis, were victim of a common practice that violated the FLSA, namely, that Dietitians at Home required them to perform the work of non-exempt employees and work more than 40 hours a week without overtime pay. Based on Plaintiff's evidence, the Court finds that Plaintiff has met her burden in showing the proposed class is similarly situated, and the Court accordingly approves conditional certification of Plaintiff's proposed class.

## II.   Notice

As the Court has determined that conditional certification is appropriate, it now turns to Plaintiff's proposed notice form and proposals for issuing notice to potential class members.

Plaintiff asks that the Court approve the language of the proposed notice form as submitted. *See* R. 66-2, Notice Form. Notice is adequate if it provides potential

class members "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 173; *see also Haugen v. Roundy's Ill., LLC*, 2019 WL 12056344, at *3 (N.D. Ill. Dec. 13, 2019). Defendants do not take issue with the content of the proposed Notice Form. *See generally* Resp. "Absent reasonable objections by either the defendant or the Court," plaintiffs should be allowed to use the language of their choice in drafting notice forms. *Ivery*, 280 F. Supp. at 1139 (internal citations omitted). As such, the Court approves the language of the Notice Form, as is, for issuance to potential class members. Defendants also do not take issue with the proposed 60-day notice period. *See generally* Resp. As such, the Court approves the unopposed 60-day notice period.

For methods of issuance, Plaintiff requests that (i) the Notice Form and Opt-In Consent Form be sent via first-class U.S. Mail, email, and text message to the members of the proposed collective class defined above; (ii) the Court enter an order requiring Defendants to post a copy of the Notice at a location in Defendants' office; and (iii) potential opt-in plaintiffs are to be sent a reminder card 20 days before the end of the opt-in period.

Defendants raise three objections to Plaintiff's proposed methods of issuance. First, Defendants argue that notice by text message is "unnecessary and overly intrusive," and Plaintiff has failed to show that she and other prospective class

members are transitory so as to warrant text message notice.[7] Resp. at 7 (citing *Slaughter*, 317 F. Supp. 3d at 994 (noting that "most people do not expect to receive unsolicited business communications via text message, particularly from a former employer" and finding "that this additional form of notice is unnecessary and overly intrusive")); *Brashier v. Quincy Prop., LLC*, 2018 WL 1934069, at *1 (C.D. Ill. Apr. 24, 2018) (finding that notice by text message was appropriate where the plaintiffs' work was "transitory")). Second, Defendants contend that Plaintiff should not be permitted to post the notice at Dietitians at Home's office, because Plaintiff has failed to show that notice via first-class mail is not possible such that posting at the office must be implemented. Resp. at 8 (citing *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 665 (7th Cir. 2015) ("when notice via first-class mail is not possible, courts may use alternative means such as . . . posting in places frequented by class members . . . .")). Third, Defendants object to sending a reminder card 20 days before the end of the opt-in period primarily because Plaintiff failed to provide a draft of the proposed reminder card in her motion, and a reminder card is unnecessary and could be

---

[7]In discussing text message notice, Defendants include a footnote, noting that "[t]o the extent the Plaintiff is permitted to send notice via email, the Plaintiff should not be permitted to send notice in the body of email messages." Resp. at 7 (citing *Slaughter v. Caidan Mgmt. Co.*, 317 F. Supp. 3d 981, 994 (N.D. Ill. 2018)). The Court does not interpret this footnote to be a formal objection to email notice and otherwise does not consider substantive arguments made only in footnotes. *See Sanders v. JGWPT Holdings, Inc.*, 2016 WL 4009941, at *10 (N.D. Ill. July 26, 2016) ("Arguments in footnotes are typically waived.") (citing *U.S. E.E.O.C. v. Custom Cos.*, 2007 WL 1810495, at *4 (N.D. Ill. June 21, 2007)); *see also* Resp. at 2 (summarizing Defendants' objections to Plaintiff's proposed notice without reference to any objection to email notice). As such, the Court does not consider this request.

interpreted as "judicial endorsement of Plaintiff's claims." Resp. at 8–9 (citing *Watt v. Fox Rest. Venture, LLC*, 2019 WL 698058, at *9 (C.D. Ill. Feb. 20, 2019)).

The Court takes each objection in turn. First, the Court is not convinced by Defendants' objections that notice by text message is unnecessary and overly intrusive and that Plaintiff has failed to show that potential class members are sufficiently "transient." Resp. at 7. While courts do not uniformly permit the transmission of notice by text message, the circumstances here appear to weigh in favor of text message notice. *See Dennis*, 438 F. Supp. 3d at 902. Per Plaintiff's testimony, she and the potential class members spend much of their work weeks travelling between patients' homes. Plaintiff Dep. at 53:3–54:14; 66:12–13; *see also* SAC ¶¶ 12, 26, 30. Given the nomadic nature of the Registered Dietitians workforce, text message may be the preferred form of communication for some potential class members. Similarly, any moderate intrusion caused by such a text message is outweighed by the interest in apprising all potential class members of this action. *Dennis*, 438 F. Supp. 3d at 902.

Second, while the Court notes that *Mullins*, Defendants' cited Seventh Circuit case, explained that posting in places frequented by class members was an "alternative means" when notice via first-class mail was "not possible," the Court does not consider *Mullins*, which discusses notice requirements in the context of *Rule 23* certification, to be a directive for Section 216(b) plaintiffs. *Mullins*, 795 F.3d at 665. To the contrary, several courts in this Circuit have permitted posting communications in addition to mailings in Section 216(b) collective actions. *Clements v. WP*

*Operations, LLC*, 2021 WL 2134910, at *6 (W.D. Wis. May 26, 2021) (allowing for notice via first-class mail *and* postings at the defendant's work facility and noting that "posting at the defendant's work facility is a regularly approved method of notice in FLSA collective actions" that is "neither unnecessary nor overly intrusive") (internal citations omitted); *Rossman*, 2020 WL 5253861, at *6 (permitting mail notice, email notice, text message notice, and job posting communications). The Court finds that posting the Notice Form at the Dietitians at Home's office is not unnecessary or overly intrusive and approves the same.

Third, Defendants object to the issuance of a reminder notice. Defendants first argue that Plaintiff's request to send a reminder card is improper, because Plaintiff failed to attach the proposed card to her motion, and Defendants are unable to vet the contents of the transmission. Resp. at 8. Defendants then argue that a reminder card is unnecessary and could be interpreted as "judicial endorsement of Plaintiff's claims." *Id.* at 9 (citing *Watt*, 2019 WL 698058, at *9). In her reply, Plaintiff inexplicably fails to address Defendants' contention that Plaintiff failed to attach a proposed reminder notice. *See generally* Reply. Instead, Plaintiff cites to several cases in which courts in this District have approved sending a reminder card. Reply at 7 (citing *Kujat*, 2019 WL 1953107, at *5; *Ivery*, 280 F. Supp. 3d at 1140; *Boltinghouse v. Abbott Lab'ys, Inc.*, 196 F. Supp. 3d 838, 844 (N.D. Ill. 2016)). Tellingly though, the plaintiffs in each of these cases properly attached a proposed reminder notice to their motions. In failing to respond to Defendants' argument, Plaintiff has waived any potential argument that a proposed reminder notice need not be attached to a motion

21

for notice issuance. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

Turning to Defendants' second argument that reminder notices are unnecessary, Plaintiff responds that a reminder is necessary to ensure all potential class members receive notice and would be useful to those who did not receive the initial notice or misplaced it. Reply at 7. The Court is unpersuaded. The court in *Dennis* squarely rejected this argument, finding that where a court has "approved three forms of transmitting notice, two of which are paperless, and ordered the posting of notice at defendants' facility," a reminder notice was not also necessary. *Dennis*, 438 F. Supp. 3d at 902–903 ("Plaintiff responds that a reminder is necessary to ensure all potential class members receive notice and would be useful to those who did not receive the initial notice or misplaced it. Here, where I've approved three forms of transmitting notice, two of which are paperless, and ordered the posting of notice at defendants' facility, plaintiff's argument is unconvincing."). The Court finds the reasoning in *Dennis* instructive. The Court has already approved three forms of transmitting notice (U.S. mail, email, and text message), two of which are paperless, and ordered the posting of notice at Dietitians at Home's office. As Plaintiff has waived any potential argument that a proposed reminder notice need not be attached to a motion for notice issuance, and the Court is not persuaded that a reminder notice is necessary given the three other forms of notice already approved, the Court denies

Plaintiff's request to send reminder notices 20 days before the close of the opt-in period.

## Conclusion

For the foregoing reasons, the Court grants certification of a nationwide collective and Court-authorized notice as follows:

1. The Court conditionally certifies a collective action by Plaintiff and similarly situated individuals pursuant to 29 U.S.C. § 216(b), defined as:

   > All individuals who were employed, or are currently employed, by Defendants, its subsidiaries or affiliated companies, as Registered Dietitians ("RDs") or any other similarly titled position at any time during the relevant statute of limitations period.

2. Defendants shall produce to Plaintiff, within ten days of this Opinion, a computer-readable data file containing the names, addresses, email addresses, telephone numbers, dates of employment, social security numbers, and dates of birth for potential members of the approved collective action.

3. Plaintiff is authorized to send the approved notice by first-class U.S. Mail, email, and text message to all potential members of the approved

collective action to inform them of their right to opt into this lawsuit within 60 days.

4. And Defendants shall post the approved notice at a location in Dietitians at Home's office where members of the approved collective class are likely to view it for the duration of the 60-day notice period.

Dated: August 27, 2021

United States District Judge
Franklin U. Valderrama